**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2621
_____

BLACK & DAVISON; JAN G. SULCOVE, Esquire; ROBERT C. SCHOLLAERT,
Esquire; ELLIOTT B. SULCOVE, Esquire; JERROLD A. SULCOVE, Esquire; MARK
T. ORNDORF,
                                          Appellants

v.

CHAMBERSBURG AREA SCHOOL DISTRICT; DANA BAKER in his individual and
official capacities; WILLIAM LENNARTZ in his individual and official capacities;
CARL BARTON in his individual and official capacities; EDWARD NORCROSS in his
individual and official capacities; JOAN SMITH in her individual and
official capacities; ROBERT FLOYD in his individual and official capacities;
MARK SCHUR in his individual and official capacities; KEVIN MINTZ in his
individual and official capacities; ALEXANDER SHARPE in his individual and
official capacities
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 1-17-cv-688)
District Judge:  Honorable Jennifer P. Wilson
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 25, 2021
_____

Before:  CHAGARES, PORTER, and ROTH, Circuit Judges

(Opinion filed: August 3, 2021)

_____

OPINION[*]

_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

The law firm Black & Davison and its partners — Mark Orndorf, Robert Schollaert, Elliot Sulcove, Jan Sulcove, and Jerrold Sulcove (collectively, the "Black & Davison Plaintiffs") — served as the District Solicitor for the Chambersburg Area School District ("Chambersburg") for nearly fifty years. Chambersburg's Board of School Directors (the "School Board") voted to terminate Black & Davison's contract. The Black & Davison Plaintiffs subsequently sued the Chambersburg Defendants,[1] alleging, among other things, that the Chambersburg Defendants violated their First Amendment rights. The District Court granted the Chambersburg Defendants' motion for summary judgment on the First Amendment claims, concluding that the Black & Davison Plaintiffs were not entitled to protection under the First Amendment because the District Solicitor position was a policymaking one. Because we hold that there is no genuine dispute as to the material fact that the District Solicitor position is a policymaking position, we will affirm.

_____

[*]    This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1]    We refer to Chambersburg, Dana Baker, William Lennartz, Carl Barton, Edward Norcross, Joan Smith, Robert Floyd, Mark Schur, Kevin Mintz, and Alexander Sharpe collectively as the "Chambersburg Defendants."

I.

We write solely for the parties' benefit, so our summary of the facts is brief. Black & Davison is a Pennsylvania law firm that served as District Solicitor for Chambersburg from approximately 1968 to 2016. It has five equity partners, all of whom are named plaintiffs in this case: Orndorf, Schollaert, Elliot Sulcove, Jan Sulcove, and Jerrold Sulcove. Apart from Schollaert, the equity partners performed solicitor duties for Chambersburg. Until 2015, Chambersburg renewed Black & Davison's appointment as District Solicitor every year through a School Board resolution.

In 2015, however, the School Board voted to approve a Request for Proposal ("RFP") seeking applications from law firms interested in serving as District Solicitor. The RFP listed the District Solicitor's responsibilities as including, among other things: 1) representing the School Board and Chambersburg on "detailed requirements in various areas of the law"; 2) "consult[ing] on personnel, labor relations, student discipline and general school law"; 3) interpreting and analyzing contracts; 4) representing Chambersburg during collective bargaining negotiations, mediations, and arbitrations; 5) representing Chambersburg at meetings and before the School Board on "school law matters, including . . . employee discipline, non-renewals, reductions-in-force, dismissal, and expulsion hearings"; 6) representing Chambersburg in tax-related appeals; 7) reviewing students' records and individualized education programs; 8) meeting with Chambersburg's administrators and staff; 9) making "[p]eriodic advisory communications on school law matters"; 10) "[r]eview[ing] and drafting . . . correspondence and policies on school matters"; and 11) "serv[ing] as

3

spokesman for [Chambersburg] on all legal matters requiring comment to public media."
Appendix ("App.") 1883. The School Board voted to renew Black & Davison's
appointment as District Solicitor. This vote took place after an election in which several
new board members were elected but before they were sworn into office. Chambersburg
and Black & Davison subsequently entered into a written contract, which provided that
Black & Davison's appointment was to last for three years.

The School Board has nine elected members — a President, a Vice President, and
seven other board members. The District Superintendent also serves on the School Board
as a non-voting board member. Five of the School Board's seats were up for election in
2015. Two political groups — Citizens for Value and Excellence in Education ("CVEE")
and Common $ense ("Common Sense") — endorsed the candidates in this election. The
individual plaintiffs supported the CVEE candidates and engaged in various campaign
activities, including donating money, recruiting candidates, handing out campaign
literature, taking constituents to the polls, hanging political signs, and vocally supporting
CVEE and its candidates. The Common Sense candidates, however, won all five seats.
Because Common Sense already held three of the four seats not up for election that year,
its victory meant that its members held a majority on the School Board. After the new
board members took their new seats, the School Board voted to terminate Black &
Davison's contract.

The Black & Davison Plaintiffs filed suit in the District Court, asserting contract
and First Amendment claims. The District Court dismissed the Black & Davison
Plaintiffs' contract claim, a decision from which they do not appeal. The court

4

subsequently granted the Chambersburg Defendants' motion for summary judgment, reasoning that the District Solicitor role was a policymaking position and that the Black & Davison Plaintiffs were consequently not entitled to First Amendment protection. The Black & Davison Plaintiffs timely appealed.[2]

## II.

The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. We have jurisdiction under 28 U.S.C. § 1291. Our review over the District Court's grant of summary judgment is plenary. Cranbury Brick Yard, LLC v. United States, 943 F.3d 701, 708 (3d Cir. 2019). We will only affirm a grant of summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Razak v. Uber Techs., Inc., 951 F.3d 137, 144 (3d Cir. 2020) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). We must view the facts in the light most favorable to the non-moving party and draw all inferences in that party's favor. Stratechuk v. Bd. of Educ., 587 F.3d 597, 603 (3d Cir. 2009). In cases involving the First Amendment, we "undertake exacting review of the whole record with a particularly close

---

[2]      The District Court also considered the Black & Davison Plaintiffs' First Amendment claim under the balancing test from Pickering v. Board of Education, 391 U.S. 563 (1968). App. 24–27. Because the Black & Davison Plaintiffs only addressed this issue in passing, Pls.' Br. 34 n.3, they have forfeited this argument. See Barna v. Bd. of Sch. Dirs., 877 F.3d 136, 145 (3d Cir. 2017). They have similarly forfeited their argument with respect to their claim under Monell v. Department of Social Services, 436 U.S. 658 (1978).

focus on facts that are determinative of a constitutional right." Galli v. N.J. Meadowlands Comm'n, 490 F.3d 265, 270 (3d Cir. 2007) (quoting Armour v. Cnty. of Beaver, 271 F.3d 417, 420 (3d Cir. 2001)); see also Ctr. for Investigative Reporting v. S.E. Pa. Transp. Auth., 975 F.3d 300, 312 (3d Cir. 2020).

When a legal standard requires the balancing of multiple factors, summary judgment may be appropriate "even if not all of the factors favor one party, so long as the evidence so favors the movant that no reasonable juror could render a verdict against it." Faush v. Tuesday Morning, Inc., 808 F.3d 208, 215 (3d Cir. 2015) (quoting In re Enterprise Rent-A-Car Wage & Hour Emp. Pracs. Litig., 683 F.3d 462, 471 (3d Cir. 2012)) (quotation marks omitted). Whether the District Solicitor position is a policymaking position "must be left to the jury if, on the other hand, reasonable minds could come to different conclusions on the issue." Id.

### III.

The Supreme Court has recognized that dismissing government employees for their political beliefs does not violate the First Amendment when the employees hold policymaking positions. Elrod v. Burns, 427 U.S. 347, 367 (1976) ("Limiting patronage dismissals to policymaking positions is sufficient to achieve this governmental end."); see also Branti v. Finkel, 445 U.S. 507, 518 (1980). Although "no clear line can be drawn between policymaking and nonpolicymaking positions," we have previously explained what factors courts should consider when determining whether political affiliation is a proper condition for a government position. Galli, 490 F.3d at 271 (quoting Elrod, 427 U.S. at 367) (alteration omitted). These factors include whether the government

6

employee: 1) "has duties that are non-discretionary or non-technical," 2) "participates in discussions or other meetings," 3) "prepares budgets," 4) "possesses the authority to hire and fire other employees," 5) "has a high salary," 6) "retains power over others," and 7) "can speak in the name of policymakers." Id.

Whether a position is a policymaking position is an "inherently fact-specific" question because courts must examine the nature of the position's responsibilities. Wetzel v. Tucker, 139 F.3d 380, 383–84 (3d Cir. 1998). This inquiry focuses on "the function of the public office in question and not the actual past duties of the particular employee involved," although "evidence of past job duties may in some cases be informative." Id. at 384 (quoting Brown v. Trench, 787 F.2d 167, 168 (3d Cir. 1986)).

The parties dispute whether the District Solicitor position is a policymaking position for which party affiliation is a proper condition. Construing the facts in the light most favorable to the Black & Davison Plaintiffs, we conclude that there is no genuine dispute of material fact that the District Solicitor position is a policymaking position and that the Chambersburg Defendants were thus entitled to summary judgment.

The District Solicitor has discretionary duties, which include, inter alia, drafting policies, advising the School Board on various school-related issues, and representing Chambersburg on matters including employee discipline. These duties necessarily require the District Solicitor to exercise its professional judgment, meaning that the first Galli factor is easily satisfied. Indeed, Black & Davison's contract with Chambersburg explicitly provided that Black & Davison would "be free to exercise its own independent professional judgment in matters requiring legal expertise." App. 647.

7

The District Solicitor additionally participates in discussions and other meetings, so the second factor similarly supports concluding that the District Solicitor position is a policymaking one. The District Solicitor, however, does not prepare Chambersburg's budget, meaning that the third factor is not met here, even though the District Solicitor does represent Chambersburg in tax-related matters. The fourth factor — whether the District Solicitor can hire or fire employees — is also not met here, but the District Solicitor does retain power over others, given that it represents Chambersburg on matters including, inter alia, employee discipline. Black & Davison's recommendation that the School Board censure a board member and drafting of the censuring documents provide further evidence of how the District Solicitor retains power over others, which means that the sixth factor is present. The District Solicitor also receives a high salary, given that Black & Davison's contract provided that it would receive between $130 and $135 per hour, reimbursement for certain expenses, an additional $15,000 per financing or refinancing project, and an annual, non-refundable $60,000 retainer. Finally, as Chambersburg's representative, the District Solicitor can speak in the name of policymakers.

The indisputable presence of all but two of the Galli factors makes clear that the position of District Solicitor is a policymaking position for which political affiliation is an appropriate precondition. See Galli, 490 F.3d at 271. Even though not all of the factors support the Chambersburg Defendants, summary judgment was appropriate

8

because the "evidence 'so favors' the [Chambersburg Defendants] that 'no reasonable juror' could render a verdict against [them]."[3]  Faush, 808 F.3d at 215.[4]

## IV.

For the foregoing reasons, we will affirm the District Court's Order.

---

[3]      The Black & Davison Plaintiffs, citing our decision in Boyle v. County of Allegheny, 139 F.3d 386 (3d Cir. 1998), argue that the District Court erred in not considering former School Board members' affidavits and the District Superintendent's testimony in which they asserted that political affiliation is not a requirement for the District Solicitor position.  The Black & Davison Plaintiffs' reliance on Boyle is misplaced.  In Boyle, we held that testimony by two out of three members of a hiring authority stating that a position did not require political affiliation created a genuine issue of material fact as to whether the position was a policymaking one.  Id. at 397, 401.  In contrast, no member of the School Board with hiring authority testified that the District Solicitor position did not or should not require political affiliation.

[4]      We have considered all other arguments the Black & Davison Plaintiffs made and conclude that they are without merit.

9