**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 11-2883

———

IN RE: ENTERPRISE RENT-A-CAR WAGE & HOUR
EMPLOYMENT PRACTICES LITIGATION

NICKOLAS HICKTON; SEAN HERBSTER; MIQUEL
MCDONALD;
MICHAEL KEITH AVERILL, JR.; JASMINE
BROMFIELD;
NILS HAGSTROM; ELSA DEPINA; JEFFREY GALIA;
ROBERT BAJKOWSKI; TORI GAUDELLI;
DONNASHEKIA RICHARD;
WAYMAN F. GRAHAM, II; KEVIN C. HAGLER,
on behalf of themselves and all others similarly situated,
Appellants

v.

ENTERPRISE HOLDINGS, INC., f/k/a Enterprise Rent-A-
Car Company;
ENTERPRISE RENT-A-CAR COMPANY OF
PITTSBURGH, LLC,
f/k/a Enterprise Rent-A-Car Company of Pittsburgh;
ENTERPRISE LEASING COMPANY OF
PHILADELPHIA, LLC,
f/k/a Enterprise Leasing Company of Philadelphia;

ENTERPRISE LEASING COMPANY-SOUTH CENTRAL,
LLC,
f/k/a Enterprise Leasing Company-South Central, Inc.;
ELRAC, LLC, f/k/a Elrac, Inc.;
ENTERPRISE LEASING COMPANY OF ORLANDO,
LLC,
f/k/a Enterprise Leasing Company of Orlando;
ENTERPRISE RENT-A-CAR COMPANY-MIDWEST,
f/k/a Enterprise Rent-A-Car Company-Midwest;
ENTERPRISE LEASING COMPANY OF CHICAGO, LLC,
f/k/a Enterprise Leasing Company of Chicago;
ENTERPRISE RENT-A-CAR COMPANY OF
TENNESSEE, LLC,
f/k/a Enterprise Rent-A-Car Company of Tennessee;
ENTERPRISE LEASING COMPANY OF FLORIDA, LLC,
f/k/a ENTERPRISE LEASING COMPANY (a Florida
Corporation);
XYZ ENTITIES 1-100

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Nos. 2-07-cv-01687, 2-09-cv-00815, 2-09-cv-00816, 2-
09-mc-00210, 2-09-cv-00824, 2-09-cv-01321, 2-09-cv-
00832, 2-09-cv-00833, 2-09-cv-01188)

District Judge:  Honorable Joy Flowers Conti

_____

Argued May 15, 2012
Before:  SMITH, FISHER and GARTH, *Circuit Judges*.

(Filed: June 28, 2012)

Gregg I. Shavitz
Hal B. Anderson
Shavitz Law Group
1515 South Federal Highway
Suite 404
Boca Raton, FL 33432

Peter A. Muhic (Argued)
James A. Maro
Kessler, Topaz, Meltzer & Check
280 King of Prussia Road
Radnor, PA 19087

J. Allen Schreiber
Mark Petro
Schreiber & Petro
2 Metroplex Drive
Suite 107
Birmingham, AL 35209

Alfred G. Yates, Jr.
Morrow & Morrow
Room 519
304 Ross Street
Suite 703
Pittsburgh, PA 15219
        *Counsel for Appellants*

Patrick L. Abramowich
Fox Rothschild
625 Liberty Avenue
29th Floor

Pittsburgh, PA 15222

William J. Kilberg
Jason J. Mendro
Jason C. Schwartz (Argued)
Gibson, Dunn & Crutcher
1050 Connecticut Avenue, N.W.
9th Floor
Washington, DC 20036

Daniel M. O'Keefe
James R. Wyrsch
Bryan Cave
211 North Broadway
Suite 3600
St. Louis, MO 63102
        *Counsel for Appellee*

———

OPINION OF THE COURT

———

Garth, *Circuit Judge*.

The only issue on this appeal is whether Enterprise Holdings, Inc.,[1] ("Enterprise Holdings"), which is the sole stockholder of thirty eight domestic subsidiaries, is a joint employer of the subsidiaries' assistant managers within the

---

[1] Enterprise Holdings, Inc. itself is a wholly owned subsidiary of a holding company called the Crawford Group, Inc. The Crawford Group is not a party to this action.

meaning of the Fair Labor Standards Act ("FLSA"). In order to answer this question, we must define the contours of the term "joint employer."

The District Court, in a comprehensive opinion,[2] held that Enterprise Holdings, Inc. was *not* a joint employer.[3] In doing so, the District Court determined that the standard to which it applied its findings of fact was found in <u>Lewis v. Vollmer of America</u>, No. 05-1632, 2008 WL 355607 (W.D. Pa. Feb. 7, 2008) and <u>Bonnette v. California Health & Welfare Agency</u>, 704 F.2d 1465, 1470 (9th Cir. 1981), abrogated on other grounds by <u>Garcia v. San Antonio Transit Authority</u>, 469 U.S. 528, 539 (1985). We will discuss those two cases, together with additional factors, which we hold to be significant in defining "joint employer" under the FLSA.

Although the standard we prescribe varies in some respects from the District Court's test, we hold that the District Court did not err in deciding for the appellee, Enterprise Holdings, Inc. and thus, in not certifying the class which the plaintiffs seek. We therefore will affirm the District Court's August 13, 2010 order which granted Enterprise Holdings, Inc.'s motion for summary judgment.

---

[2] <u>See</u> <u>In re Enterprise Rent-A-Car Wage & Hour Employment Practice Litigation</u>, 735 F.Supp.2d 277 (W.D.Pa.2010).

[3] The District Court referred to the parent company Enterprise Holdings, Inc. as ERAC-Missouri in its opinion. Those terms refer to the same entity, the defendant Enterprise Holdings, Inc. Throughout this opinion, we will refer to the parent company as Enterprise Holdings, Inc.

## I.

Plaintiff Nickolas Hickton was a former assistant branch manager employed at Enterprise-Rent-a-Car Company of Pittsburgh. On December 11, 2007, Hickton filed a nationwide collective class action under the FLSA in the Western District of Pennsylvania. Hickton claimed that the defendant, Enterprise Holdings, Inc., the parent company of Enterprise-Rent-a-Car Company of Pittsburgh, violated the FLSA by failing to pay required overtime wages.

The FLSA provides that:

> [n]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Some employees are classified as exempt under the FLSA, 29 U.S.C. § 213(a), and are consequently exceptions to this rule.

Hickton's action, filed on behalf of all individuals employed during the putative class period as *branch* managers or *assistant branch* managers at the various Enterprise locations,[4] named both Enterprise Holdings, Inc.[5] and Enterprise Rent-a-Car Company of Pittsburgh as defendants. By order of the United States Judicial Panel on Multidistrict Litigation, similar actions pending in other Districts were transferred to the Western District of Pennsylvania.[6] Since that time, a number of other cases have

---

[4] At this time, Hickton no longer pursues claims on behalf of branch managers. He pursues his claims only on behalf of *assistant branch managers*.

[5] At the time, Enterprise Holdings, Inc. was known as Enterprise Rent-A-Car Company, Inc.

[6] The transferred cases were *DePina v. Enterprise Leasing Co. of Orlando*, No. 09-359 (M.D.Fla.); *Graham v. Enterprise Leasing Co.*, No. 07-23373 (S.D.Fla.); *Gaudelli v. Enterprise Rent-A-Car Co. of Tennessee*, No. 09-580 (N.D.Ga.); *Averill v. Enterprise Rent-A-Car Co.*, No. 08-4191 (N.D.Ill.); *Galia v. Enterprise Rent-A-Car Co.*, No. 09-1504 (N.D.Ill.); and *Bromfield v. Enterprise Rent-A-Car Co.*, No. 09-2403 (S.D.N.Y.).

also been transferred pursuant to the Judicial Panel on Multidistrict Litigation's order.[7]

On October 23, 2009, Hickton, along with other named plaintiffs, filed an Amended Master Complaint on behalf of themselves and all other current and former assistant branch managers of Enterprise locations. The Complaint alleged that the plaintiffs' employers had unlawfully classified them as exempt from the FLSA's overtime provisions, and sought overtime compensation, liquidated damages, attorneys' fees, and costs. In addition to the respective subsidiaries for whom the various plaintiffs worked, the Complaint also alleged that the parent company, Enterprise Holdings, Inc., was liable for the overtime pay as a joint employer of the plaintiffs.

As we have noted, Enterprise Holdings, Inc. is the sole shareholder of 38 domestic subsidiaries, such as Enterprise Rent-a-Car Company of Pittsburgh, which rents and sells vehicles and conducts other business under the "Enterprise" brand name. These various subsidiaries each have branch

---

[7] Those cases are *Steen v. Enterprise Holdings, Inc.*, No. 10-83 (E.D.N.C.); *Modiri v. Enterprise Holdings, Inc.*, No. 10-2239 (D.Nev.); *Hagler v. Enterprise Leasing Company-South Central, Inc.*, No. 09-1321 (N.D.Ala.); *Lamothe v. Enterprise Holdings, Inc.*, No. 11-609 (E.D.Va.); *Hardy v. Enterprise Holdings, Inc.*, No. 10-953 (D.Or.); *Douty v. Enterprise Holdings, Inc.*, No. 10-2660 (D.Md.); and *Schieser v. Enterprise Holdings, Inc.*, No. 11-114 (D. Ariz.).

locations, and the plaintiff-appellants are all former assistant managers at various branches of these subsidiaries.[8]

## II.

The record reveals the following facts. Enterprise Holdings, Inc. does not directly rent or sell vehicles. These activities are carried on only by its 38 subsidiaries. However, Enterprise Holdings, Inc. directly and indirectly, supplies administrative services and support to each subsidiary. These services include, but are not limited to, business guidelines, employee benefit plans, rental reservation tools, a central customer contact service, insurance, technology, and legal services. The business guidelines provided by Enterprise Holdings, Inc. to its subsidiaries are, in turn, distributed to the subsidiaries' employees in a manual which states that "[i]nformation contained in [this manual] refers to employees of: [t]he Crawford Group, Inc., Enterprise Rent-A-Car Company and their various operating subsidiaries."

The District Court found that the use of these services was optional in the discretion of the individual subsidiaries, but that in exchange for these services, each of the subsidiaries pays corporate dividends and management fees to Enterprise Holdings, Inc. At all times relevant to this appeal, the Board of Directors of each subsidiary consisted solely of the same three people: Andrew C. Taylor, Pamela W. Nicholson, and William W. Snyder, all of whom also served

---

[8] The Enterprise website does not draw any distinction between Enterprise Holdings, Inc. or its 38 subsidiaries, and represents that "Enterprise Rent-a-Car" has a fleet of nearly 900,000 rental vehicles, 64,000 employees, and 6,900 offices throughout the world.

on the Board of Directors of Enterprise Holdings, Inc. They served, respectively, as Enterprise Holdings, Inc.'s Chairman and Chief Executive Officer (CEO), President and Chief Operating Officer (COO), and Executive Vice President and Chief Financial Officer (CFO).

In addition, Enterprise Holdings, Inc. has a human resources department, which provides certain services to subsidiaries, including, among other things, job descriptions, best practices, and compensation guides. These best practices and guides recommend which employees of subsidiaries should be salaried, and which employees should receive an hourly wage. The human resources department also negotiates health plans which are offered to employees of Enterprise Holdings, Inc. and to employees of the subsidiaries. Participation in such plans is not required, but if a subsidiary's employee enrolls in the various benefit programs, Enterprise Holdings, Inc. bills that subsidiary for the benefits the employee elects. Additionally, the human resources department provides assistance in relocation for employees transferring from one subsidiary to another, and maintains a list of available employment opportunities with any of Enterprise Holdings, Inc.'s subsidiaries.

The human resources department, in addition, provides training materials to subsidiaries, and supplies a standard performance review form for evaluating employees of subsidiaries. Finally, through both its business guidelines and various human resources documents, Enterprise Holdings, Inc. recommends salary ranges for branch employees. The District Court found that each individual subsidiary can choose to use any or all of these guidelines or services in its

own discretion; none of these guidelines or services are mandatory.

The District Court also found that at a 2005 meeting attended by representatives of Enterprise Holdings, Inc. and its subsidiaries, Enterprise Holdings, Inc. "recommended" that the subsidiaries *not pay* overtime wages to "Assistant Managers" and "Assistant Branch Managers" who were employed by subsidiaries other than the California subsidiaries.

Enterprise Holdings, Inc. moved[9] for summary judgment on the grounds that it was not a "joint employer" of the plaintiffs, and therefore was not liable under the FLSA. The District Court granted its motion for summary judgment and the plaintiffs timely appealed.

## **III.**

The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331. Pursuant to the District Court's May 17, 2011 order certifying this case for interlocutory appeal, we have jurisdiction under 28 U.S.C. § 1292 (b).

We review a District Court's grant of summary judgment *de novo*. Viera v. Life Ins. Co. of North America, 642 F.3d 407, 413 (3d Cir. 2011). "Summary judgment is appropriate where there is no genuine issue of material fact to

---

[9] Enterprise Holdings had also moved to dismiss the plaintiffs' complaint for lack of specific jurisdiction. The District Court denied that motion without prejudice. Because this issue is no longer relevant and was not appealed, we do not address it.

be resolved and the moving party is entitled to judgment as a matter of law." Alcoa, Inc. v. United States, 509 F.3d 173, 175 (3d Cir. 2007) (citation omitted).

The mere existence of some disputed fact will not result in the denial of a summary judgment motion—nor need the District Court decide that *every* factor weighs against joint employment. Zheng v. Liberty Apparel Co., 355 F.3d 61, 76-77 (2d Cir. 2003).

We apply the same standard of review that was applied by the District Court.

## IV.

Hickton and the plaintiffs contend that Enterprise Holdings violated 29 U.S.C. § 207 (a)(2), which provides that "[n]o employer shall employ any of his employees . . . for a workweek longer than forty hours . . . unless such employee receives" overtime compensation or is exempt from receiving overtime pursuant to 29 U.S.C. § 207(b). The resolution of this appeal therefore requires us to identify the appropriate test to determine whether a defendant is a plaintiff's joint employer for purposes of the FLSA.

The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The applicable federal regulations also provide as a definition of an employer-employee relationship under the FLSA "[w]here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by,

or is under common control with the other employer." 29 C.F.R. § 791.2(b). A "single individual may stand in the relation of an employee to two or more employers at the same time under the [FLSA]." 29 C.F.R. § 791.2(a). "A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case." Id.

When determining whether someone is an employee under the FLSA, "economic reality rather than technical concepts is to be the test of employment." Goldberg v. Whitaker House Co-op., Inc., 366 U.S. 28, 33 (1961) (internal quotation marks omitted). Under this theory, the FLSA defines employer "expansively," Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992), and with "striking breadth." Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947). The Supreme Court has even gone so far as to acknowledge that the FLSA's definition of an employer is "the broadest definition that has ever been included in any one act." United States v. Rosenwasser, 323 U.S. 360, 363 n.3 (1945).

This court has not yet had the opportunity to consider the appropriate standard for determining whether a defendant is a plaintiff's "employer" within the meaning of that term under the FLSA. We therefore look both to this court's jurisprudence for determining employer-employee status in related contexts and to the jurisprudence of our sister circuits.

We are of the view that the starting point for the joint employer test should be N.L.R.B. v. Browning-Ferris Indus. of PA., 691 F.2d 1117, 1123 (3d Cir. 1982). We conclude that "where two or more employers exert significant control

over the same employees—[whether] from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment—they constitute 'joint employers'" under the FLSA. *Id.* at 1124; see also Moldenhauer v. Tazewell-Pekin Consol. Communications Ctr., 536 F.3d 640 (7th Cir. 2008). This is consistent with the FLSA regulations regarding joint employment, which state that a joint employment relationship will generally be considered to exist "[w]here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with another employer." 29 C.F.R. § 791.2(b). Ultimate control is not necessarily required to find an employer-employee relationship under the FLSA, and even "indirect" control may be sufficient. In other words, the alleged employer must exercise "significant control" Browning-Ferris, 691 F.2d at 1124.

In Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1981), the Ninth Circuit created a test for determining whether an employer was a joint employer under the Fair Labor Standards Act. In Bonnette, the Ninth Circuit considered: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Bonnette, supra, 704 F.2d at 1470.

Although the Bonnette court set out four specific inquiries to determine joint employment status, close

examination of those inquiries reveals that they serve to identify whether the alleged joint employer exerts significant control over the relevant employees. The <u>Bonnette</u> test is unsurprisingly, therefore, quite similar to the standard employed by the District Court in the present case to grant Enterprise Holdings, Inc.'s motion for summary judgment. The District Court drew upon its own test to identify employment relationships under the ADEA and Title VII in <u>Lewis v. Vollmer of America</u>, No. 05-1632, 2008 WL 355607 (W.D. Pa. Feb. 7, 2008). <u>Lewis</u>, which referred to our precedent in <u>Browning-Ferris</u>, set forth three factors to be considered in determining whether an entity is an employer: "1) authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; 2) day-to-day supervision of employees, including employee discipline; and 3) control of employee records, including payroll, insurance, taxes and the like." (Citation omitted).

## A.

The District Court found that these factors were consistent with the Department of Labor regulations and with <u>Bonnette</u>. The same factors were also applied by the First and Second Circuits in <u>Baystate Alternative Staffing, Inc. v. Herman</u>, 163 F.3d 668, 675 (1st Cir. 1998) and <u>Zheng</u>, supra, both of which adopted the <u>Bonnette</u> test in full.

Because of the uniqueness of the FLSA, a determination of joint employment "must be based on a consideration of the total employment situation and the economic realities of the work relationship." <u>Bonnette</u>, 704 F.2d at 1470. A simple application of the <u>Lewis</u> test would only find joint employment where an employer had direct

15

control over the employee, but the FLSA designates those entities with sufficient *indirect* control as well. We therefore conclude that while the factors outlined today in Lewis are instructive they cannot, without amplification, serve as the test for determining joint employment under the FLSA.

**B.**

In refining the Lewis factors, we would modify them as follows: does the alleged employer have: (1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like. These factors are not materially different than those used by our sister circuits, and reflect the facts that will generally be most relevant in a joint employment context.

We emphasize, however, that these factors *do not constitute an exhaustive list* of all potentially relevant facts, and should not be "blindly applied." See Bonnette, 704 F.2d 1469-70. A determination as to whether a defendant is a joint employer "must be based on a consideration of the total employment situation and the economic realities of the work relationship." Id., 1470l; see Goldberg v. Whitaker House Co-op, Inc., 336 U.S. 28, 33 (1961). Therefore, district courts should not be confined to "narrow legalistic definitions" and must instead consider all the relevant evidence, including evidence that does not fall neatly within one of the above factors. Zheng v. Liberty Apparel Co., supra, 355 F.3d at 71; see Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947) (explaining that whether an employment relationship exists under the FLSA "does not depend on . . . isolated

16

factors but rather upon the circumstances of the whole activity"); 29 C.F.R. 791.2(a) (stating that the determination "depends upon all the facts in the particular case"). We make clear, however, that the Lewis factors provide a useful analytical framework and may generally serve as the starting point for a district court's analysis, as they did here, especially in the parent-subsidiary context.

To summarize: When faced with a question requiring examination of a potential joint employment relationship under the FLSA, we conclude that courts should consider: 1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes. As we have noted, however, this list is not exhaustive, and cannot be "blindly applied" as the sole considerations necessary to determine joint employment. Id., 1469-70. If a court concludes that other indicia of "significant control" are present to suggest that a given employer was a joint employer of an employee, that determination may be persuasive, when incorporated with the individual factors we have set forth.

Therefore, we hold that the test for "joint employer" under the FLSA is as we have fashioned it, a melding of the modified Lewis test and the Bonnette test, consistent with those considerations of the real world where such additional

economic concerns are prominent. We will refer to this test as the Enterprise test for ease of reference.

The plaintiffs here stress consideration of factors other than those that we have held to constitute a test of joint employment. They have stressed that through the interlocking directorates of the Board of Directors of each of the subsidiaries, which consist of three individuals who are also on the Board of Directors of the parent company, Enterprise Holdings, Inc. maintains that degree of control that would classify it as an employer. They also claim that the nature of the business of renting vehicles, which involves both the subsidiaries and the parent, is a further compelling indication of joint employment. They further argue that because the various employment systems and benefits are recommended by Enterprise Holdings, Inc., they in effect are mandatory and not merely recommendations, and, as such, constitute the control which meets the test of a "joint employer." Additionally, they have focused on the one aspect of the District Court's analysis where the District Court held that the first Lewis (now the first Enterprise) factor was neutral in its effect and the question of "recommendations vs. mandatory" policies was a disputed fact. Thus, they maintain that in addition to the District Court erring in finding no joint employment, it erred in concluding as a matter of law that summary judgment should be granted to the defendant, Enterprise Holdings, Inc.

We are not impressed by these claims. We first note that the record does not support the plaintiffs' claims that Enterprise Holdings, Inc.'s recommendations were anything more than recommendations. In particular, we have studied the record most closely, and conclude that the plaintiffs

18

produced no evidence that Enterprise Holdings, Inc.'s actions at any time amounted to mandatory directions rather than mere recommendations. We agree that in addition to the factors of the Enterprise test, all factors, including the fact of interlocking directorates, and the nature of the business being conducted by the parent and the subsidiaries, are to be considered and weighed in deciding whether a joint employer status has been found. However, we cannot conclude that these facts suggest that the District Court committed error in granting summary judgment. Quite to the contrary, the evidence that was taken by the District Court was comprehensive in detail and in scope and explored all the factors that our Enterprise test requires. We point out also that the one aspect of the District Court's analysis where the District Court found an Enterprise factor to be neutral cannot affect the balance of the District Court's reasoned conclusions, with which we agree, and cannot defeat summary judgment. See Zheng, supra; Davis v. Walt Disney Co., 430 F.3d 901, 903 (8th Cir. 2005) ("Factual disputes regarding a single factor are insufficient to support the reversal of summary judgment unless they tilt the entire balance in favor of such a finding."); Moreau v. Air France, 356 F.3d 942, 952 (9th Cir. 2004) (two factors favoring a finding of joint employment do "not outweigh the numerous significant factors . . . which weigh heavily against finding a joint employer relationship," and summary judgment was appropriate).

Applying the Enterprise test to the facts before us, we conclude that the District Court was correct in its determination that Enterprise Holdings, Inc. was not a joint employer of Hickton or the other assistant managers.

19

Enterprise Holdings, Inc. had no authority to hire or fire assistant managers, no authority to promulgate work rules or assignments, and no authority to set compensation, benefits, schedules, or rates or methods of payment. Furthermore, Enterprise Holdings, Inc. was not involved in employee supervision or employee discipline, nor did it exercise or maintain any control over employee records.

While the plaintiffs contend that Enterprise Holdings, Inc. functionally held many of these roles by way of the guidelines and manuals it promulgated to its subsidiaries, we are not influenced by this claim. Inasmuch as the adoption of Enterprise Holdings, Inc.'s *suggested* policies and practices was entirely discretionary on the part of the subsidiaries, Enterprise Holdings, Inc. had no more authority over the conditions of the assistant managers' employment than would a third-party consultant who made suggestions for improvements to the subsidiaries' business practices. Each of the individual factors indicates that Enterprise Holdings was not an employer of Hickton or the other assistant managers, a conclusion that is bolstered by the readily apparent fact that Enterprise Holdings exercised *no* control, let alone *significant* control, over the assistant managers.

When a legal standard requires the balancing of multiple factors, as it does in this case, summary judgment may still be appropriate even if not all of the factors favor one party—this is such a case. The evidence in the instant case so favors the defendant that we conclude no reasonable juror could find that Enterprise Holdings, Inc. was the plaintiffs' employer, and that the grant of summary judgment to Enterprise Holdings, Inc. under the <u>Enterprise</u> test we have

adopted was correct, even though one factor may have been deemed to favor the plaintiffs or been found to be neutral.[10]

Thus, under the test we have set forth, and having considered, as the District Court considered, all facts and circumstances revealed by the record, including elements of the nature of the car rental business and the interlocking directorates, we conclude that the District Court was correct in its summary judgment conclusion and that the plaintiffs have failed to demonstrate that Enterprise Holdings, Inc., the parent of the 38 subsidiaries, is a joint employer of the branch assistant managers.

We will affirm the order of the District Court.

---

[10] Judge Smith is of the view that while Enterprise Holdings, Inc. has the legal authority to hire, fire, set assignments, etc., which bears on the first two factors of the Enterprise test, given the complete absence of exercised control, this legal authority is insufficient to confer joint-employer status as a matter of law.