# Third District Court of Appeal

## State of Florida

Opinion filed September 8, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1571
Lower Tribunal No. 18-36746
_____

**The Schumacher Group of Delaware, Inc.,**
Appellant,

vs.

**Fritz Dictan, etc., et al.,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Carlos Guzman, Judge.

Shutts & Bowen, LLP, and Amy M. Wessel (Fort Lauderdale); Pollack Solomon Duffy LLP, and Phillip Rakhunov and Lauren A. Riddle (Boston, MA), for appellant.

Freedland Harwin Valori, P.L., and Daniel Harwin, and Melissa Gunion (Fort Lauderdale); Philip D. Parrish P.A., and Philip D. Parrish, for appellees.

Before LOGUE, SCALES, and LINDSEY, JJ.

LINDSEY, J.

Appellant (Defendant below) The Schumacher Group of Delaware ("TSG Delaware") appeals from an unelaborated non-final order denying its motion to dismiss for lack of personal jurisdiction. Because Appellee (Plaintiff below) Fritz Dictan failed to satisfy the requirements of Florida's long-arm statute, we reverse the order on appeal and remand with instructions to dismiss for lack of personal jurisdiction.

## I.    BACKGROUND

In October 2018, Dictan brought the underlying medical malpractice action against various Florida defendants, including Dr. Larkin; The Schumacher Group of Florida, Inc. ("TSG Florida"); Duval Emergency Group, LLC; and Jackson North Medical Center, for medical treatment that resulted in the death of Dictan's wife, Marilaine Dictan Levi. There is no dispute on appeal that these Florida defendants are subject to personal jurisdiction.

In March 2020, Dictan filed an Amended Complaint, adding Appellant TSG Delaware.[1] The Complaint acknowledges that TSG Delaware is a Delaware corporation with its principal place of business in Louisiana. There

---

[1] The Amended Complaint also added TSG Resources, a Louisiana Corporation that is registered to do business in Florida. As with the other Florida entities, there is no dispute that TSG Resources is subject to personal jurisdiction in Florida.

2

is no reference to any provision of Florida's long-arm statute in the Complaint, and it does not specifically assert general or specific personal jurisdiction.

The Complaint includes a lengthy list of TSG Delaware's alleged "numerous and extensive contacts" with Florida. It also alleges TSG Delaware and its Florida subsidiaries were doing business and operating under two trade names in Florida: Schumacher Group and Schumacher Clinical Partners. The Complaint further alleges that Dr. Larkin was an agent of TSG Delaware.

TSG Delaware moved to dismiss the Amended Complaint for lack of personal jurisdiction. In support, TSG Delaware submitted the declaration of Lisha Falk, its Vice President of Contracting and Assistant Corporate Secretary.[2] Falk affirmed that TSG Delaware is a Delaware holding company that does not do any business in Florida, does not have an office in Florida, does not have any employees in Florida, and does not own or lease any property in Florida. Falk also explained that although TSG Delaware owns the stock of TSG Florida and TSG Resources, both of which

---

[2] Dictan conducted discovery before filing the Amended Complaint, which included a deposition of Falk. In addition to Falk's Declaration, TSG Delaware attached excerpts of the Falk Deposition to its motion.

do business in Florida (and are defendants below), TSG Delaware does not control the business operations of its Florida affiliates. This includes defendant Duval, whose sole member is TSG Florida. Moreover, TSG Delaware asserted that Dr. Larkin was an independent contractor of Duval, a twice removed subsidiary of TSG Delaware. Further, these entities all maintain separate corporate books and records, and TSG Delaware's board of directors is separate from TSG Florida's and TSG Resources' board of directors. In short, the organizational structure of these entities is as follows:



4

With respect to the allegation in the Complaint that TSG Delaware does business in Florida as "Schumacher Group" and "Schumacher Clinical Partners," Falk affirmed that these were trademarks used by TSG Delaware and its corporate affiliates but not entities or "d/b/a" designations.

In August 2020, the trial court conducted a non-evidentiary hearing. Dictan relied on an insurance policy under which TSG Delaware was a named insured.[3] Because this policy also covers TSG Delaware's Florida affiliates and provides insurance coverage against Florida risk, Dictan argued jurisdiction was proper under subsection 4 of Florida's long-arm statute. See § 48.193(1)(a)(4), Fla. Stat. (2020) (subjecting a nonresident to jurisdiction for a cause of action arising from "contracting to insure a person, property, or risk located within this state at the time of contracting"). TSG Delaware argued that the mere purchase of an insurance policy by a parent that covers its subsidiaries does not subject the parent to jurisdiction.

Dictan also focused extensively on TSG Delaware's alleged contacts in Florida *through* "Schumacher Group and/or Schumacher Clinical Partners," arguing that these trademarks were "doing business" in Florida. In response, TSG Delaware explained that the trademarks are not legal

---

[3] Dictan first mentioned this insurance policy in his written response in opposition to TSG Delaware's motion to dismiss; it is not mentioned in the Amended Complaint.

5

entities and they do not "do business" anywhere. Though the Florida affiliates used these trademarks, TSG Delaware argued that shared trademarks among affiliates is not enough to subject TSG Delaware to jurisdiction in Florida.

Finally, Dictan argued that jurisdiction was proper under subsection 2 of Florida's long-arm statute because Dr. Larkin as TSG Delaware's agent committed a tort. See § 48.193(1)(a)(4) (subjecting a nonresident to jurisdiction who personally or through an agent commits a tortious act in Florida). TSG Delaware argued there was nothing in the record connecting Dr. Larkin to TSG Delaware. Indeed, the only record evidence is an *independent contractor agreement* between Dr. Larkin and Duval, a twice removed subsidiary of TSG Delaware.

At the conclusion of the hearing, TSG Delaware requested an evidentiary hearing on the intellectual property issues if the trial court believed it would be helpful. The court stated it would limit itself to the allegations in the pleadings and the response. The court ultimately entered an unelaborated order denying TSG Delaware's motion to dismiss. TSG Delaware timely appealed.

II.   **ANALYSIS**

6

It is undisputed that only specific personal jurisdiction is at issue in this appeal. Florida's long-arm statute, section 48.193, lists eight types of acts (or contacts) that give rise to specific jurisdiction. The statute not only requires that the nonresident defendant engage in one (or more) of the enumerated acts, but also that the cause of action "arise from" the enumerated acts. See Philip J. Padovano, Fla. Prac., Civil Practice § 8:7 (2021 ed.) ("The term 'arising from' in section 48.193 means that there must be a substantive connection between the basis of the cause of action and the activity in the state.").

Dictan argues that specific jurisdiction is proper based on the following three acts: (1) TSG Delaware's insurance policy that covers its affiliates and risks in Florida; (2) TSG Delaware's use of trademarks to do business in Florida; and (3) TSG Delaware's commission of a tortious act in Florida through its agent, Dr. Larkin. TSG Delaware maintains that Dictan has failed to satisfy the requirements of Florida's long-arm statute but alternatively requests us to remand with instructions to hold an evidentiary hearing. [4]

---

[4] Though not required for resolution of this case, trial courts are permitted to conduct evidentiary hearings on a motion to dismiss for lack of personal jurisdiction. See Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 503 (Fla. 1989) (explaining that when the parties' sworn proof is in conflict, "the trial court will have to hold a limited evidentiary hearing in order to determine the jurisdiction issue").

7

## A.    TSG Delaware's Insurance Policy

Pursuant to section 48.193(1)(a)(4), a foreign defendant submits to jurisdiction for any cause of action arising from "[c]ontracting to insure a person, property, or risk located within the state at the time contracting." Dictan argues that TSG Delaware's insurance policy "is a huge, case dispositive 'elephant in the room.'"  We disagree.

As an initial matter, Dictan has failed to explain how his medical malpractice tort claims arise from the insurance policy.  See Lapidus v. NCL Am. LLC, No. 12-21183-CIV, 2013 WL 646185, at *4 (S.D. Fla. Feb. 14, 2013) ("Here, Plaintiff's contention that the Excursion Entities agreed to indemnify NCL for his claims is insufficient because Plaintiffs negligence claims do not arise from an indemnity agreement. Plaintiff's claims arise from NCL's allegedly negligent actions onboard the ship and in Hawaii. Put another way, Plaintiffs negligence claims could be asserted regardless of whether an indemnity agreement exists between NCL and the Excursion Entities."); Lee-Bolton v. Koppers Inc., No. 1:10CV253/MCR/GRJ, 2014 WL 11512198, at *3 (N.D. Fla. Mar. 31, 2014) ("[E]ven if the Court construes Beazer Limited's guarantee . . . as a contract to insure a risk, the long-arm statute nonetheless requires that Plaintiffs' cause of action 'aris[e] from' the act of contracting. This 'requirement necessitates a "direct affiliation, nexus,

8

or substantial connection" between the basis for the cause of action and the *action* that falls under the long-arm statute,' which has not been shown in this case. Plaintiffs' . . . Second Amended Complaint plainly sounds in tort, not contract . . . ." (citations omitted)).

Further, the statute's plain language requires the defendant to be an insurer: "[c]ontracting *to insure* a person, property or risk . . . ." It is undisputed that TSG Delaware is not the insurer but the insured. See Padovano, supra § 8:7 ("The rationale for this fourth subsection of the long-arm statute is that *an insurance company* purposely avails itself of the privileges afforded by the State of Florida by selling insurance in the state." (Emphasis added)). Indeed, even a foreign insurance *agency* that procures insurance for a Florida client is not subject to jurisdiction pursuant to this provision because the insurance agency is not the insurer and therefore does not "insure a risk" within the state of Florida. See Alexander & Alexander of the Carolinas, Inc. v. Northwest Oxygen, Inc., 541 So. 2d 1238, 1239 (Fla. 2d DCA 1989). Dictan has cited no authority for the proposition that an *insured* can be subject to jurisdiction pursuant to section 48.193(1)(a)(4). And we decline to create such authority here.

**B.    TSG Delaware's Use of Trademarks**

A foreign defendant submits to jurisdiction pursuant to section 48.193(1)(a)(4) for any cause of action arising from "operating, conducting, engaging in, or carrying on a business venture in this state or having an officer or agency in this state." Nearly all the jurisdictional contacts alleged in Dictan's Answer Brief are based on the theory that TSG Delaware acted through two of its *trademarks*: "Schumacher Group" and "Schumacher Clinical Partners."[5]

It is undisputed that "Schumacher Group" and "Schumacher Clinical Partners" are *not* legal entities. They are trademarks used by TSG Delaware and its affiliates, including the Florida affiliates that are defendants below. Consequently, TSG Delaware does not act through these nonentity trademarks.

Moreover, an affiliate's use of the same intellectual property as a parent corporation is legally insufficient to confer personal jurisdiction over the parent. See Baban v. Intercontinental Hotels Grp. PLC, No. 04-21065-CIV, 2006 WL 8418675, at *3 (S.D. Fla. Mar. 8, 2006) (granting parent corporation's motion to dismiss for lack of personal jurisdiction where parent used the same trade name as its affiliates and dealt with the same brand of

---

[5] TSG Delaware itself is not mentioned in any of the documents submitted by Dictan except the insurance policy and records from the United States Patent and Trademark Office.

hotels as its Florida subsidiary); <u>Prescott v. LivaNova PLC</u>, No. 3:16-CV-00103-JAJ, 2017 WL 2591270, at *9 (S.D. Iowa June 12, 2017) (granting a motion to dismiss for lack of personal jurisdiction where "[t]he companies share a common branding scheme, including a common email domain, but maintain completely separate day-to-day operations, employees, officers, and corporate structures"); <u>Patterson v. Home Depot, USA, Inc.</u>, 684 F. Supp. 2d 1170, 1179 (D. Ariz. 2010) ("The fact that the two companies used the same logo and intellectual property pursuant to the licensing agreement also does not demonstrate that Krause–Werk was the alter-ego of the other."); <u>Von Grabe v. Sprint PCS</u>, 312 F. Supp. 2d 1285, 1301 (S.D. Cal. 2003) (holding that a common trade name and logo, without more, is not a sufficient basis for establishing personal jurisdiction); <u>In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.</u>, 735 F. Supp. 2d 277, 285 (W.D. Pa. 2010), <u>aff'd</u>, 683 F.3d 462 (3d Cir. 2012) (sharing employment policy manuals, trademarks, and brand names by parent and subsidiary, and the parent hosting the website used by subsidiary in the forum state is not sufficient to confer personal jurisdiction over a foreign parent corporation).

Dictan attempts to distinguish these cases by arguing that the two trademarks should be treated as entities and as TSG Delaware's direct

agents. Dictan cites no authority supporting this novel approach.[6]  Moreover, even if TSG Delaware is somehow engaged in a business venture in Florida through its nonentity trademarks, Dictan has failed to articulate how his medical malpractice action arises from this alleged business venture.

**C.  TSG Delaware's Alleged Commission of a Tortious Act in Florida through Its Agent, Dr. Larkin**

A foreign defendant, either personally *or through an agent*, is subject to jurisdiction in Florida under section 48.193(1)(a)(2) for any cause of action arising from "[c]ommitting a tortious act within this state."

Dictan admits that Dr. Larkin entered into an independent contractor agreement *with Duval*.[7]  And it is undisputed that Duval is a subsidiary of TSG Florida, and TSG Florida, in turn, is a subsidiary of TSG Delaware.  TSG Delaware argues there is nothing in the record connecting Dr. Larkin with TSG Delaware (and indeed, nothing connecting TSG Delaware and Duval).

---

[6] Dictan uses designations such as "a/k/a" and "d/b/a" throughout its various filings when referring to the two trademarks.  It is undisputed that TSG Delaware is not registered to do business in Florida, including as any "d/b/a." See § 865.09(3)(a) ("A person may not engage in business under a fictitious name unless the person first registers the name with the division by filing a registration . . . .").

[7] This "Physician Agreement" explicitly states that Dr. Larkin's relationship with Duval "shall be that of an independent contractor" and that Duval "shall not exercise any control or direction over the methods by which Physician shall perform his/her professional work and duties while on duty."

Dictan argues that agency is an intensely factual relationship, rarely subject to a determination as a matter of law. Though we agree this is generally true, Dictan cannot point to anything in the record that directly connects TSG Delaware with Dr. Larkin. Instead, Dictan argues that TSG Delaware through its trademarks Schumacher Clinical and Schumacher Group "had the right to control virtually every aspect of Dr. Larkin's presence at Jackson North." But as previously explained, these trademarks, which were used by TSG Delaware and its Florida affiliates, are not legal entities, and Dictan fails to articulate how a nonentity trademark could exert control over Dr. Larkin.

## D. Evidentiary Hearing

During the hearing below, both parties recognized that there was a disputed fact as to who owned the relevant trademarks. This is immaterial to our analysis because even if TSG Delaware owns the trademarks (as Dictan contends), there is no dispute that these trademarks are not legal entities. Moreover, as set forth above, the case law is clear that the shared use of trademarks among affiliates is insufficient to subject a foreign parent to personal jurisdiction. See, e.g., Von Grabe, 312 F. Supp. 2d 1285, 1297 (S.D. Cal. 2003) ("In the instant case, there is a parent-subsidiary relationship, but there is not such unity of interest, i.e., alter ego, so as to

13

disregard the corporate relationship. [The parent's] contacts with California appear to be limited to its subsidiaries doing business in California, and the use of a common trademark and trade name with its numerous subsidiaries who are operating in California. . . . Thus . . . it does not appear that [the parent] has sufficient minimum contacts with California, by purposeful availment or through an alter ego analysis, to support general or specific personal jurisdiction.").

## III.    CONCLUSION

Because Dictan has failed to satisfy the requirements of Florida's long-arm statute,[8] we reverse the unelaborated order denying TSG Delaware's motion to dismiss and remand with instructions to dismiss for lack of personal jurisdiction.

Reversed and remanded.

---

[8] <u>Venetian Salami</u> sets forth both a statutory and constitutional inquiry to determine whether Florida courts may exercise personal jurisdiction over a nonresident defendant.  554 So. 2d at 502.  Because Dictan fails to establish personal jurisdiction under the long-arm statute, there is no need to determine whether TSG Delaware has sufficient minimum contacts with the state to satisfy constitutional due process.