# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-1369

RALPH TALARICO,
Individually and on behalf of all others similarly situated,
Appellant

v.

PUBLIC PARTNERSHIPS LLC,
d/b/a PCG Public Partnerships

---

Appeal from U.S. District Court, E.D. Pa.
Judge Jeffrey L. Schmehl
No. 5:17-cv-02165

Before: MATEY, FREEMAN, and CHUNG, *Circuit Judges*
Submitted Pursuant to Third Circuit L.A.R. 34.1(a)  Mar. 17, 2026
Decided: [May 19, 2026]

---

NONPRECEDENTIAL OPINION[*]

CHUNG, *Circuit Judge*.  Ralph Talarico brought various state and federal claims against

Public Partnerships LLC ("PPL") for unpaid overtime wages on behalf of himself and

others similarly situated (collectively "Plaintiffs"). The District Court held a seven-day

bench trial to determine whether PPL jointly employed the Plaintiffs.  The District Court

found that PPL was not Plaintiffs' joint employer and Plaintiffs appealed.  For the reasons

set forth below, we will affirm the District Court's entry of judgment in favor of PPL.

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

# I. **BACKGROUND**[1]

Talarico worked as a Care Worker from 2013 to 2018. This care was provided pursuant to a Medicaid waiver program called the Self-Directed Services model (the "Program"). The Program is administered by the Commonwealth of Pennsylvania's Office of Long-Term Living ("OLTL"), and empowers qualifying disabled individuals, "Participants," to "exercise decision-making authority in identifying, accessing, managing and purchasing their [personal assistance services]." 42 C.F.R. § 441.450(b).

In 2012, OLTL entered into a Grant Agreement with PPL to provide needed financial management services in implementing the Program. The Grant Agreement directs PPL to make payments to Care Workers after processing their timesheets, and ensure background checks and work authorization forms are completed. In addition, PPL provides some orientation and training for Care Workers.

Upon enrolling in the Program, Participants receive a Common Law Employer Informational Packet. In fulfilling their duties under the Program, Participants work with Service Coordinators, contracted by OLTL, to create an Individualized Service Plan. The Individualized Service Plan determines the Participant's medical needs and the total hours of care a Participant requires each week, the Care Worker's responsibilities, and what care they will provide for the Participant. PPL is not involved in finalizing or approving Individualized Service Plans. The employer packet states that Participants serve as the

---

[1] Because we write for the parties, we recite only the facts pertinent to our decision. The facts recited herein were findings made by the District Court. See generally N. J. Retail Merchs. Ass'n v. Sidamon-Eristoff, 669 F.3d 374, 390 (3d Cir. 2012).

employers of Care Workers, and that they are responsible for recruiting, hiring, training, and, where necessary, firing Care Workers. From May to August 2017, and starting again December 1, 2018, newly hired Care Workers were required to attend a paid orientation program conducted by PPL.

Once a Participant has decided to hire a given Care Worker, PPL provides the Participant with the paperwork needed to execute the hiring decision, namely, a Care Worker Application. The Care Worker completes the application and it is returned to PPL. PPL calculates the range of compensation a Care Worker can receive from the Program in accordance with OLTL and state and federal minimum wage law. This involves identifying and applying tax deductions and applying costs such as worker's compensation insurance. PPL selects the Care Workers' worker's compensation carrier and broker. Participants then determine the Care Workers' hourly wage, and have the option to exceed program maximums by paying the difference out-of-pocket. Participants send Care Workers' timesheets to PPL for payment.

PPL sends the Care Worker an enrollment packet. Upon completion, the Care Worker can begin receiving payment for their services. PPL reviews the Qualification Form to ensure that the Care Worker meets OLTL's program requirements. PPL similarly conducts a background check required by Pennsylvania of the prospective Care Worker and provides the results to the Participant. Participants can hire a Care Worker with a criminal history and PPL has no authority to override this decision if made.

Once a Care Worker's employment commences, PPL is not involved in their day-to-day work. PPL neither observes nor provides feedback to Care Workers. PPL maintains

3

Care Worker's employee records such as payroll and tax forms, employment enrollment packets, and submitted timesheets. Participants set the Care Workers' schedules.

Despite working overtime from the beginning of their employment, Plaintiffs only began receiving overtime pay after January 1, 2016.

Plaintiffs filed a Complaint asserting claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101-333.115, and the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1-260.45, against PPL for failure to pay overtime wages to Care Workers. PPL moved for summary judgment on March 8, 2019. The District Court granted Defendant's motion on January 28, 2020. On December 7, 2020, we reversed the award of summary judgment, concluding there was a genuine dispute of material fact as to whether PPL was a joint employer of the Plaintiffs. Thereafter, on March 5, 2021, Plaintiffs moved for FLSA collective action treatment under 29 U.S.C. § 216(b) and Rule 23 class certification. The District Court granted Plaintiffs' motions on May 12, 2022. After discovery and following a seven-day bench trial, the District Court entered judgment in favor of Defendant on January 30, 2025, finding that it was not a joint employer and therefore not liable for any unpaid overtime. Plaintiffs timely appealed.

## II. **DISCUSSION**[2]

On appeal, Plaintiffs argue the District Court erroneously entered judgment in favor of Defendant because the record below demonstrated that PPL is Care Workers' joint

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367, and we have jurisdiction under 28 U.S.C. § 1291.

employer.

To determine whether two or more entities qualify as a joint employer, we employ the test first articulated in In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation, 683 F.3d 462 (3d Cir. 2012). We identified the relevant factors as follows:

> 1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

Id. at 469.[3] However, the ultimate question is whether "indicia of 'significant control' are present to suggest that a given employer was a joint employer of an employee[.]" Id. at 470.

We review findings of fact under the highly deferential standard of clear error. Alexander v. S.C. State Conf. of the NAACP, 602 U.S. 1, 18 (2024). "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Fed. Trade Comm'n v. AbbVie Inc, 976 F.3d 327, 368 (3d Cir. 2020) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). We review a district court's legal conclusions following a bench trial de novo. VICI Racing, LLC v. T-Mobile USA, Inc., 763 F.3d 273, 282-83 (3d Cir. 2014).

### A. Authority to Hire and Fire Care Workers

---

[3] Plaintiffs challenge neither the District Court's findings of fact nor its conclusions of law as to Enterprise's third and fourth factors. We confine our discussion accordingly.

The District Court found that Participants "recruit their own [Care Workers], PPL has no role in recruiting or recommending [Care Workers]." A5. In doing so, the District Court relied on its other factual findings, such as PPL's limited assessment of a Care Worker's qualifications; performance of required background checks; and Participants' ability to hire a Care Worker with a positive criminal history.

Plaintiffs argue that the District Court erred because it disregarded PPL's role in reviewing Care Workers' qualifications and PPL's maintenance of a recruitment database. We disagree. The District Court did not ignore PPL's role in assessing qualifications, it merely weighed this evidence differently than Plaintiffs after observing that PPL's role was confined to reviewing Qualification Forms to confirm that Care Workers met program requirements. Moreover, the cases Plaintiffs cite do not support a conclusion that the District Court erred in holding that PPL's narrow role weighed against finding that PPL had hiring authority. See Hall v. DIRECTV, LLC, 846 F.3d 757, 773 (4th Cir. 2017) (not applying Enterprise and contemplating situation where entity determined the hiring criteria); N.L.R.B. v. Browning-Ferris Industries of Pennsylvania, Inc., 691 F.2d 1117, 1124-25 (3d Cir. 1982) (involving an entity that established its own criteria for evaluating whether employees were qualified for employment).

Concerning recruiting, Plaintiffs argue the District Court failed to consider that PPL created and maintained an "an online forum where Participant-Employers and [Care Workers] could voluntarily post their information to find each other." Defendant's Br. at 32. Plaintiffs forfeited this argument as they did not meaningfully present it to the District

6

Court, though, even if preserved, we would not find error. While PPL established the forum, the record does not reflect that PPL had control over the Participants' *use* of that forum to recruit a Care Worker.[4]

The evidence at trial was consistent with that considered in Talarico I, where we concluded that this factor weighed against joint employment. Talarico v. Pub. P'ships, LLC, 837 F. App'x 81, 85 (3d Cir. 2020). We find no merit in Plaintiffs' arguments or reason to reach a different conclusion here.

### B. Authority to Set Work Rules and Conditions of Employment

The District Court made a number of factual findings upon which it based its conclusion that PPL had minor authority over Care Workers' work rules and their conditions of employment, including that PPL had a limited role in Care Workers' orientation and offered discrete training, that "the rate of pay selected by a [Participant] for their [Care Worker] was exclusively within the control of the [Participant]; [and that] PPL had no input as to the specific rate a [Participant] opts to pay their [Care Worker]." A11.

Plaintiffs do not challenge most of these findings but do argue that the District Court clearly erred in finding that Participants determined Care Workers' compensation. Relying on our statement in Talarico I that one example of PPL's control was "PPL['s] cap[ping of] the maximum rate [Care Workers] may receive based on the Commonwealth's

---

[4] Plaintiffs cite in support Senne v. Kansas City Royals Baseball Corp., 591 F. Supp. 3d 453 (N.D. Cal. 2022). The district court there found Major League Baseball to be a joint employer because it established the rules for eligibility to participate in the draft. Senne, 591 F. Supp. 3d at 518. Here, OLTL, not PPL, set the minimum qualifications for Care Workers; PPL's administration of the forum did not alter any eligibility terms.

reimbursement rate," Plaintiffs argue that PPL controlled Care Workers' pay by defining the Program's range of allowable rates. Talarico I, 837 F. App'x at 85.

As Plaintiffs recognize, the facts were not fully developed when Talarico I was decided. We now enjoy the benefit of a record developed by extensive discovery and a seven-day bench trial, which reveals that PPL calculated Care Workers' compensation rate, taking the wage schedule determined by OLTL, and subtracting costs such as worker's compensation insurance or applying tax deductions. Plaintiffs argue that "PPL helped determine the size of the deductions by, for instance, managing workers' compensation and determining participants' tax deductions." Plaintiffs' Reply Br. at 10 (internal citations omitted). They further contend that because Participants often paid Care Workers the OLTL maximum wage, PPL functionally set Care Workers' wages.

There is evidence in the record that PPL had some impact on the maximum OLTL wage. For instance, PPL would identify the applicable tax exemptions, and PPL paperwork detailed that tax exemptions had to be taken when applicable. There is also evidence that PPL selected the worker's compensation carrier and broker.[5] In the end, though, Participants were free to choose any wage and could exceed the OLTL maximum wage and pay the difference if they desired. While under these facts PPL had some impact on

_____

[5] It is unclear from the record whether PPL selected the specific workers' compensation insurance policy Care Workers would enroll in. Regardless, Plaintiffs' citation to Antenor v. D & S Farms, 88 F.3d 925 (11th Cir. 1996) is still unpersuasive, as there the defendants also "named themselves as the policy holders[,]" id. at 936, and the record does not reflect (and Plaintiffs do not argue) that PPL named itself as the policyholder.

the ultimate maximum wage available under the OLTL schedule, the District Court did not clearly err in finding that Participants determined Care Workers' pay.

Plaintiffs also argue that PPL nonetheless exercised control over compensation and, thus, their conditions of employment, because 1) PPL set Care Workers' pay rate for their time spent in orientation; 2) PPL worked with OLTL to determine hazard pay and when Care Workers would receive such pay; and 3) if a Participant failed to specify a wage when onboarding a Care Worker, PPL had authority to decide a Care Worker's hourly rate. However, we are not convinced that such influence amounts to authority over the Care Workers' conditions of employment. PPL set orientation pay rates at the minimum wage, remitted orientation payments, and calculated the hazard pay amounts in conjunction with OLTL, but did not control whether Care Workers would receive orientation pay, nor if they would be eligible to receive hazard pay. And when Participants failed to specify a rate on hiring forms, a Care Worker would only be paid PPL's default rate of minimum wage as an interim measure until the Participant told PPL the actual wage to be paid. Given that the Participant had final say over Care Worker wages, we do not agree that such dynamics amount to substantial control over compensation, and the District Court did not err in concluding that PPL had minor authority over Care Workers' compensation, "slightly" favoring employer status. Cf. Walsh v. Fusion Japanese Steakhouse, Inc., 548 F. Supp. 3d 513, 523 (W.D. Pa. 2021).

### C. PPL is not Care Workers' Joint Employer Under Enterprise

"[B]ased on a consideration of the total employment situation and the economic realities of the work relationship,'" PPL is not a joint employer under Enterprise.

9

Enterprise, 683 F.3d at 469 (quoting Bonnette v. Cal. Health & Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1983)). The total employment situation and the economic realities of the relationship between PPL and Care Workers indicate that PPL is involved in Care Workers' employment, but does not exercise "significant control" over their work and its surrounding circumstances. Enterprise, 683 F.3d at 468. PPL does not control day-to-day functions, Care Worker compensation, nor whether a given Care Worker would be hired or fired. At most, the record points to PPL implementing requirements set by the program and OLTL, and facilitating the inception and maintenance of program participation by Care Workers and Participants. While an equal number of Enterprise factors weigh for and against joint employer status, our analysis is not a counting exercise. Enterprise, 683 F.3d at 469 (citing Moreau v. Air France, 356 F.3d 942, 952 (9th Cir. 2004)). Because the record merely reflects PPL's role as the SDS vendor and Financial Management Services provider, PPL is not a joint employer of Care Workers.

\* \* \* \* \*

For the reasons stated above, we will AFFIRM.

10